# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA
### DULUTH DIVISION

*21-CV-104 MJD/ LIB*

CLINTON STRANGE,

*Plaintiff*

v.

DIRECT RECOVERY SERVICES, L.L.C.,

a Minnesota Domestic Limited Liability Company

*Defendant*

***JURY TRIAL DEMANDED***

## CIVIL ACTION COMPLAINT
### FOR VIOLATIONS OF:
### THE TELEPHONE CONSUMER PROTECTION ACT OF 1991
### &
### THE FAIR DEBT COLLECTION PRACTICES ACT OF 1977

## PRELIMINARY STATEMENT:

1. The *pro se* Plaintiff CLINTON STRANGE brings this action in good faith against Defendant DIRECT RECOVERY SERVICES, L.L.C. ("DRS" or "DEFENDANT"), which is a Minnesota Domestic Limited Liability Company, that regularly engages in the business of collection of consumer debt (specifically consumer credit debt) on behalf of others. The Plaintiff alleges that this Defendant conducted a relentless "skip-tracing" pre-recorded voice autodialer telephone campaign of calls to the Plaintiff's cell phone number 318-780-8890 to attempt to collect a $332.50 (Three Hundred Thirty-Two Dollars and Fifty/100ths) debt *allegedly* owed to an original creditor by Margaret Hough (a person unknown to Plaintiff). In doing so, the Defendant DRS violated the Telephone Consumer Protection Act of 1991 ("TCPA"), the Fair Debt Collection Practices Act of 1977 ("FDCPA"), and the laws of Colorado, Georgia, Minnesota, and Texas.

2. The Plaintiff seeks a maximum award of damages, injunctive relief, pre and or post judgement interest on judgement, recovery of all costs and fees associated with bringing and litigating the action, along with other relief.

## JURISDICTION & VENUE:

3. **Jurisdiction primarily** arises in this U.S. District Court under Federal Questions as the TCPA and the FDCPA are Federal Statutes pursuant to 28 U.S.C. § 1331.

4. **Supplemental Jurisdiction** would be properly applied relative to the Plaintiff's State Law claims as the claims arise out of the same misconduct alleged that primarily arises under Federal Questions pursuant to 28 U.S.C. § 1367.

5. **Venue** lies proper in this U.S. District because the Defendant can be found here by their incorporation or alternatively Defendant maintains a registered agent in this U.S. District pursuant to 28 U.S.C. § 1391.

## THE PARTIES:

6. **Plaintiff CLINTON STRANGE** is an adult individual residing at the address of:

CLINTON STRANGE

7021 WINBURN DRIVE

GREENWOOD, LA 71033

7. **Defendant DIRECT RECOVERY SERVICES, L.L.C.** is a Minnesota Domestic

Limited Liability Company, that regularly engages in the business of collection of

consumer debt. According to the Minnesota Department of Commerce this Defendant is a

duly licensed Collection Agency holding the License No. 40458470. According to the

Minnesota Secretary of State this Defendant maintains a Registered Office Address at:

DIRECT RECOVERY SERVICES, L.L.C.

115 Waterfront Drive

Two Harbors, MN 55616

## THE FACTUAL ALLEGATIONS:

### The Documented Autodialed Calls & Texts

8. Defendant DRS placed at least four (4) known and documented autodialed calls to the

Plaintiff's cellphone number 318-780-8890 in attempts to collect a $332.50 consumer debt

obligation from a defaulting debtor, Margaret Hough, who is a person unknown to the

Plaintiff that may have at one time been a prior wireless subscriber of the Verizon Wireless

phone number 318-780-8890. Plaintiff will show that two (2) of the calls left pre-recorded

voice mail messages in the Plaintiff's voicemail, and that two (2) of the calls were

answered by the Plaintiff that played pre-recorded voice messages during the beginning of

the calls.

9. Defendant is also alleged to have placed one (1) autodialed text message from a short code

to the Plaintiff's cellphone number 318-780-8890.

10. Plaintiff will further show that Defendant DRS did not make a reasonable effort to reveal their true identity which stifled Plaintiff's ability to convey a cease-and-desist request to mitigate his harm and damages.

11. On January 14, 2020 at 3:30pm CST the Plaintiff was sitting on his couch in his living room watching streamed content on his Television via his cellphone's connected Google Chromecast[1] device. He jumped up and ran to his media room, where the cellphone was on-charge, and tried to answer the call because he thought it was a friend or other type of person (attorney, business colleague) in Georgia because of the area - code but was too late. Before Plaintiff could swipe-to-answer the Defendant DRS's autodialer terminated the call. Plaintiff heard a voicemail "chime" about two minutes later but ignored it [the voicemail notification] because the content that the Plaintiff had already reprovisioned and began re-streaming from his cellphone to his television set (before the Defendant rudely interrupted it) was very urgent and important. It is the Plaintiff's recollection that on January 15, 2020 at 2:39pm CST the Plaintiff dialed into his voicemailbox and heard the Defendant DRS's first of four violative autodialed pre-recorded voice messages that in broad strokes  was an attempt to collect a debt of $332.50 owed *allegedly* by Margaret Hough to DRS's client.

12. Plaintiff represents that the below image labeled Figure A is a true and accurate representation of his cellphone's screen [referred to herein as a screen capture or screen shot] in regard to the January 14, 2020 call from DRS.

--------------------------------------------------------------



1 – A Google Chromecast Device  is a device  that hooks up to the back of a Television. According to Google, LLC the device *"Allows you to stream favorite entertainment from your phone to TV"*. https://store.google.com/product/chromecast - page last visited 01/02/2021 at 10:25pm CST



|                   |                          |
|-------------------|--------------------------|
| **Figure A**      | **Figure B**             |

13. Plaintiff has a number of friends, acquaintances, business colleagues, and attorneys in the Fulton County, Georgia area. Plaintiff has a small but actual consumer footprint in Georgia. Defendant's call was made from a Georgia number indicating that it was made (placed or initiated) from in or around Fulton County, Georgia [See above Figure B].

14. On January 17, 2020 at 8:45am CST Defendant DRS transmitted an autodialed debt collection text message derived from a pre-written template of text that was transmitted to thousands of consumers on January 17, 2020 with the slight alteration of the insertion of the intended recipients name (Margaret Hough) and account (DRS collection account) number 113270170.

15. According to the Georgia Division of Corporations, Defendant DRS is a Collection Agency licensed under Control Number: 17087856.

16. Plaintiff represents that the below image labeled Figure C is a true and accurate representation of his cellphone's text message screen in regard to the autodialed debt collection text message that Defendant DRS's autodialer platform technology transmitted

from short code 38106 to the Plaintiff's Verizon Wireless cellphone number 318-780-8890

[as documented in below Figure D] on January 17, 2020 at 8:45am CST.



| Figure C | Figure D |

**17.** The Plaintiff represents that the alleged autodialed text message (as above in Figure C) referenced in the body [of text] a Fulton County, Georgia (call-back) number of "*404-806-7208*".

**18.** On March 4, 2020 at 10:09am CST the Defendant DRS placed an autodialed call to the Plaintiff's cellphone number 318-780-8890 from a number appearing on the Plaintiff's cellphone's Caller ID as 303-325-3382 (as represented below in Figure E). Because the Plaintiff believed it might be his Aunt calling from Denver (based on the area code and prefix as represented in Figure F) he answered the call. When the Plaintiff answered the call, a pre-recorded voice message began to play. Plaintiff had a Digital Camera at arms-

length, so he grabbed it and began recording the call. The Plaintiff represents that the below is a true and accurate representation of the pre-recorded voice message that played during the call:

Recorded Voice: (00:00)
... if you want to resolve it. The phone
number, 844-427-7607. Options are as follows.

Recorded Voice: (00:10)
On your balance of $332.50. A 50% settlement
of $166.25. A 65% settlement in three
payments. A 80% settlement in 12 payments of $22.17.

Recorded Voice: (00:30)
Call 844-427-7607. We are willing to work with
you. However, however, we are obligated to
report back to our client on this matter. 844-427-7607.

Recorded Voice: (00:49)
Press one to speak with an agent. For instructions to
pay online, please press two. To
hear the settlement options again, please press three.



**Figure E**                    **Figure F**

19. On March 16, 2020 at 10:07am CST Defendant DRS placed an autodialed call to the

Plaintiff's cellphone number 318-780-8890 (from a Minnesota are code number 952-856-

4162) while the Plaintiff was at Jim's BBQ on Spur 156 in Waskom, Texas which the

Plaintiff missed, but later (after receiving the waiting voicemail message audible notice)

played it during lunch that left a pre-recorded voice debt collection message that stated:

Voice Mail: (00:08)
You have two new voice messages. You
have 13 saved voice messages. First
voice message sent Monday, March 16th
at 10:07am from 952-856-4162. Duration one
minute, 10 seconds.
PreRecorded 1: (00:40)
[inaudible 00:00:40] after 7:00pm Wednesday, April 1st contacting
you with a solution will no longer be our primary concern.
The fortune of the matter will be outside of our offices.
If you wish to resolve the matter with us or
make a statement on your behalf you may
contact us today, we'll be open until
7:00pm. The phone number is 844-379-3417.
Again the number is 844-379-3417.
Recorded Speaker: (01:03)
Press 1 to be connected. This is a final private message
for Margret Hough. If this is not Margret Hough
please hang up now.
PreRecorded 1: (01:13)
Hello this is Anderson Cooper. We
made every effort to reach you
[inaudible 00:01:16] after 7:00 pm, Wednesday, April 1st contacting
you with a solution will no longer be our
primary concern. The fortune of the matter
will be outside of our offices. If you
wish to resolve the matter with us or make
a statement on your behalf you may contact
us today, we'll be open until 7:00pm. The phone number
is 844-379-3417. Again, the number is 844-379-3417.
PreRecorded Speaker: (01:42)
Press 1 to be connected.

20. On March 26, 2020 at 11:18am CST the Plaintiff was in his Media Room at his home in

Caddo Parish, Louisiana. The Plaintiff heard his cellphone ringing and saw on the Caller

ID that it was from Dallas County, Texas so the Plaintiff believed it might be his Uncle

Sam, a Texas Financial Institution (a bank), or a Sears Roebuck & Co. work colleague

calling so he answered the call. When the Plaintiff answered the call a pre-recorded voice

message began playing. Plaintiff had a Digital Camera at arms-length, so he grabbed it and

began recording the message that played which stated:

Speaker 1: (<u>00:00</u>)
...times that effect you. To be connected to a
representative, please press one now.
Speaker 1: (<u>00:05</u>)
Federal law designates this matter as a confidential
notice for Margaret Hough. If this is not
Margaret Hough, please hang up now. If
this is Margaret Hough, please continue listening
to this message. Do not listen to this message
where others can hear as it contains confidential information.
Speaker 1: (<u>00:24</u>)
There will now be a three-second pause.
Speaker 1: (<u>00:27</u>)
We are able to help you. It is important you call.
Your account and our office need your attention, and
we do have news in light of the times that effect you. To
be connected to a representative, please press one now.



**Figure G**                                    **Figure H**

21.  Plaintiff represents that the above image labeled Figure G is a true and accurate representation of the Plaintiff's cellphone's screen in regard to the March 26, 2020 call that Plaintiff received from Defendant DRS from 469-333-6186 (a Dallas County, Texas number) as shown in Figure H.

### Willful & Knowing Violations

22. Plaintiff represents that Defendant has been sued numerous times for similarly alleged allegations in the following actions. Plaintiff has attached and incorporates a list of all the known Federal Cases where Defendant was a party to a Federal Civil Action [See Exhibit A].

23. Defendant DRS's misconduct is representative of blatant unrepentant recidivist behavior and absolutely without question makes their violations both willful & knowing.

### Plaintiff's Allegations of ATDS Utilization Regarding Text Messages

24. The Defendant DRS's autodialed text message sent on January 17, 2020 at 8:45am CST was sent from a short code (38106) and not by a human. The transmission of the text message was completely automated and lacked the necessary amount of human contact intervention to classify the transmission as anything other than an ATDS call [autodialed text]. Plaintiff represents that Umpteen Thousand[2] Consumers received a like or similar transmission from DRS on that same day.

---

2- "Umpteen Thousand" is a term that Plaintiff and his close family members used to describe a number defying comprehension, or alternatively an unknown largesque number. Meaning: A lot, Many, Many tens-of-Thousands, or more.

25. In *Pederson v. Donald J. Trump for President*, Civil No. 19-2735 (JRT/HB), 2020 U.S.

Dist. LEXIS 99974 (D. Minn.) (June 8, 2020) this Court held that :

> "At least one circuit has explicitly found that
> an autodialer must randomly or sequentially generate
> numbers, and not use an uploaded database or a stored list.
> *See Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1304-05 (11th Cir.
> 2020). However, other circuits have found to the contrary.
> *See Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052
> (9th Cir. 2018), cert. dismissed, ___ U.S. ___, 139 S.Ct. 1289, 203 L.Ed.2d 300 (2019).
> ("[W]e conclude that the statutory definition of ATDS is not limited to devices with the
> capacity to call numbers produced by a `random or sequential number generator' but also
> includes devices with the capacity to dial stored numbers automatically.") The Second
> Circuit recently followed the Ninth Circuit, finding that "[a]s the FCC additionally clarified
> in 2012, the statutory definition of an ATDS `covers any equipment that has the specified
> capacity to generate numbers and dial them without human intervention regardless of
> whether the numbers called are randomly or sequentially generated or come from calling
> lists.'" *Duran v. La Boom Disco, Inc.,* 955 F.3d 279, 287 (2d Cir. 2020) (emphasis omitted)
> (quoting *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of
> 1991*, 27 F.C.C. Rcd. 15391, 15392 n.5 (2012)). The Eighth Circuit has not yet weighed in
> on this issue, and the Court finds the logic of the Second and Ninth Circuits to be more
> persuasive. Under the Trump Campaign's theory (and Eleventh Circuit precedent), software
> that could dial a number at random from a phonebook (imagining that there were still such
> things as phonebooks) would not constitute an autodialer, because a phonebook is nothing
> more than a list of numbers compiled by humans. The Court sees no reason why software
> must generate numbers itself, and will not read such a limitation into the text of the statute.
> Accordingly, the Court finds that Plaintiffs allegations sufficiently describe an autodialer,
> and the Court will deny the Campaign's Motion to Dismiss on this ground."

<u>The Plaintiff's Harm & Injuries</u>

26. The Defendant's autodialed calls and text message interrupted the Plaintiff's activities of

daily living, his Television viewing, and were generally an annoyance and a nuisance.

Recently, Supreme Court Justice Kavanaugh stated (concerning the TCPA) during Oral

Arguments in *Barr v. American Ass'n of Political Consultants*; Kavanaugh closed the

questioning by pointing Martinez [counsel for petitioner] to evidence that in "the real

world," "this is one of the more popular laws on the books because people don't like cell

phone robocalls. That seems just common sense." He pressed Martinez, "Do you want to argue against that common sense?" [3]

27. Defendant DRS's autodialed calls and the text message harmed and damaged the Plaintiff by way of their costs: (1) lost minutes off his wireless cellphone plan, and (2) lost mobile data on the Verizon Mobile Data plan.

28. The U.S. Federal Communications Commission (FCC) also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

Choice of Law & Forum

29. Where the Court's jurisdiction over a claim is based on diversity or supplemental jurisdiction, the Court "appl[ies] the [forum's] choice-of-law rules in determining which state law governs the issue[s]" before it. *Ferrell v. West Bend Mut. Ins. Co.*, 393 F.3d 786, 796 (8th Cir. 2005) (citation omitted). In the case at bar the Court should apply Minnesota choice-of-law rules to determine which state's law applies to the diversity- and supplemental-jurisdiction-based claims in this case. *Guardian Fiberglass, Inc. v. Whit Davis Lumber Co.*, 509 F.3d 512, 515 (8th Cir. 2007).

30. Plaintiff believes that he has addressed in an appropriate manner what state laws apply to the individual incidents, and respectfully requests that the Court apply the consumer protection laws of the different states that correspond with each claim.

---

3- Recommended Citation: Amanda Shanor, Argument analysis: Justices skeptical of robocall law, but appear to want to keep it, SCOTUSblog (May. 7, 2020, 1:04 PM), https://www.scotusblog.com/2020/05/argument-analysis-justices-skeptical-of-robocall-law-but-appear-to-want-to-keep-it/

## THE COUNTS & CAUSES OF ACTION:

## COUNT I:

## THE FAIR DEBT COLLECTION PRACTICES ACT OF 1977

31. Plaintiff incorporates all the foregoing paragraphs as though the same were set forth at length herein.

32. Plaintiff asserts that Defendant violated the Fair Debt Collection Practices Act. The FDCPA prohibits a debt collector from engaging in conduct with "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. "Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number" is a violation of the FDCPA. Id. at § 1692d (5).

33. Plaintiff also asserts that Defendant violated sections 1692e and 1692f of the FDCPA. Pursuant to § 1692e, a debt collector is prohibited from using "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

34. When Plaintiff would telephone the Defendant back to ask "who DRS is" the agents would hang up on the Plaintiff because he was not Margaret Hough.

35. Thus, this Court should find that Defendant violated § 1692d (5) and § 1692f of the FDCPA, but Plaintiff does not seek damages under subsection (e) of the FDCPA for reasons that will be explained as follows in Cause of Action No. VII.

36. Plaintiff requests this Court award him statutory damages in the amount of $1,000.00—the maximum amount allowed under § 1692k(a)(2)(A) of the FDCPA. In a (non-binding- but persuasive decision) case, similar to this one, a Court was persuaded to award damages of $1,000 under the FDCPA in *Sellers v. Direct Recovery Services, LLC* No. 2:18-cv-11955-

GAD DE *13 (E.D. Mich.) (Oct. 2, 2018) finding "Accordingly, this Court will award Plaintiff statutory damages in the amount of $1,000.00 for Defendant's violation of the FDCPA."

## COUNT II:

### THE TELEPHONE CONSUMER PROTECTION ACT OF 1991
### 47 U.S.C. § 227(b)

37. Plaintiff incorporates all the foregoing paragraphs as though the same were set forth at length herein.

38. All the Defendant DRS's calls never had a live agent say anything before the pre-recorded voice messages would play in either the 2 answered calls or the 2 voicemails left.

39. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." See 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). See 47 U.S.C. § 227(b)(3).

40. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

41. Defendant's calls were made without the prior express consent, or the prior express written consent, of the called party. 47 C.F.R. § 64.1200(a)(2); 47 C.F.R. § 64.1200(f)(8).

42. The Defendant violated the TCPA by (a) using an automatic telephone dialing system or a prerecorded voice to make calls to cellular telephone numbers without the required consent. See 47 U.S.C. § 227(b).

43. The Defendant's violations were willful and/or knowing.

44. Because of Defendant's violations of the TCPA, Plaintiff seeks $500 in statutory damages per violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3).

45. Plaintiff also seeks Injunctive Relief prohibiting Defendant from calling Plaintiff's telephone number using an automatic telephone dialing system or a pre-recorded voice, absent an emergency circumstance.

## CAUSE OF ACTION No. III:
## THE GEORGIA FAIR BUSINESS PRACTICES ACT OF 1975
### Georgia Fair Business Practices Act ("GFBPA"), O.C.G.A. § 10-1-390 et seq.

46. Plaintiff incorporates all the foregoing paragraphs as though the same were set forth at length herein.

47. Georgia's statute (GFBPA) has not been found to be pre-empted by Federal Statutes. See *McLAIN v. MARINER HEALTH CARE, INC.* No. A06A0923 (Court of Appeals of Georgia.) (May 15, 2006) (Quoting *New York State Dept. of Social Svcs. v. Dublino*, 413 U.S. 405, 421(II), 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973) ("Where coordinate state and federal efforts exist within a complementary administrative framework, and in the pursuit of common purposes, the case for federal pre-emption becomes a less persuasive one.").

48. Plaintiff hopes to persuade the Court that Georgia Law applies to the January 14, 2020 call from DRS Georgia area code number call and the January 17, 2020 autodialed text message that referenced [in the body of text] a Georgia telephone number. Plaintiff cites to an out of Circuit decision from the Middle District of Georgia where the Chief Judge of that District addresses whether a violation of the FDCPA violates Georgia law as reasoned by that Court in *Moody v. Synchrony Bank* No. 5:20-cv-00061-MTT DE *11 (M.D. Ga.) (Sept. 29, 2020) finding "it is well established that a violation of the FDCPA also violates the

GFBPA. *1st Nationwide Collection Agency, Inc. v. Werner,* 288 Ga.App. 457, 459, 654

S.E.2d 428, 431 (Ga. App. 2007); *see Gilmore v. Account Mgmt., Inc.,* 357 F. App'x 218,

220 (11th Cir. 2009) ("*Werner* also supports the conclusion that *Account Management*

necessarily violated Georgia's FBPA when it violated the FDCPA."); *Shurley v. McNeil &*

*Meyers Asset Mgmt. Grp. LLC,* 2018 WL 4053326, at *3 (M.D. Ga. Aug. 24, 2018) ("a

violation of the FDCPA is also a violation of the GFBPA") (citing cases); *Kuria v.*

*Palisades Acquisition XVI, LLC,* 752 F.Supp.2d 1293, 1300 n.6 (N.D. Ga. 2010)

("Violation of the FDCPA is sufficient to create a violation of the GFBPA")."

49. Plaintiff relies on the discretion of the Court to award damages that is finds to be

reasonable for each and every violation up to $1,000 per violation.


## CAUSE OF ACTION No. IV:

## THE GEORGIA UNFAIR OR DECEPTIVE PRACTICES TOWARD THE ELDERLY ACT OF 1981

### O.C.G.A. § 10-1-850

50. Plaintiff incorporates all the foregoing paragraphs as though the same were set forth at

length herein.

51. Plaintiff can show that both the State of Louisiana and the U.S. Department of Veteran

Affairs have decided that since December 2017 the Plaintiff is totally and permanently

disabled. Plaintiff receives VA benefits monthly at above the 100% rate due to his service-

connected disabilities. Plaintiff represents that he is a disabled person as defined by

O.C.G.A. § 10-1-850 (1) "Disabled person" means a person who has a physical or mental

impairment which substantially limits one or more of such person's major life activities. As

used in this paragraph, "physical or mental impairment" means any of the following:

(A) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss substantially affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive; digestive; genitourinary; hemic and lymphatic; skin; or endocrine; and

(B) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities. The term "physical or mental impairment" includes, but is not limited to, such diseases and conditions as orthopedic, visual, speech, and hearing impairment, cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, mental retardation, and emotional illness.

(2) "Elder person" means a person who is 60 years of age or older.

(3) "Major life activities" includes functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.

(4) "Substantially limits" means interferes with or affects over an extended period of time. Minor temporary ailments or injuries shall not be considered physical or mental impairments which substantially limit a person's major life activities. Examples of minor temporary ailments are colds, influenza, or sprains or minor injuries.

52. Plaintiff represents that he can check all of the above boxes (except for subpart 3 because he is 46 years old) and is a Disabled person under Georgia Law.

53. Defendant knew or reasonably should have known that their relentless violative misconduct might cause harm to a certain percentage of disabled persons in their *allegedly* unfair debt collection campaign activities.

54. Georgia Law applies (relative to the Pre-Recorded Voice Debt Collection call on Jan. 14, 2020 and the Debt collection autodialed text message on Jan. 17, 2020 that referenced a Georgia call back number) and affords protection for disabled individuals, such as the Plaintiff, under the Unfair or Deceptive Practices Toward the Elderly [Act]" ("UDPTEA"), O.C.G.A. § 10-1-850.

55. Pursuant to the provisions of O.C.G.A. § 10-1-851 the Plaintiff respectfully requests that the Court in its discretion would award Plaintiff up to $10,000 for each and every violation that it finds Defendant liable for under this cause of action. Plaintiff represents that it was the Georgia Legislative intent that an enhanced civil penalty would apply to causes of action such as this by drafting the statute to read "When any person who is found to have conducted business in violation of Article 15, 17, or 21 of this chapter is found to have committed said violation against elder or disabled persons, in addition to any civil penalty otherwise set forth or imposed, the court may impose an additional civil penalty not to exceed $10,000.00 for each violation."

**CAUSE OF ACTION No. V:**
**THE TEXAS FINANCE CODE SECTION 392**

56. Plaintiff incorporates all the foregoing paragraphs as though the same were set forth at length herein.

57. It is a fact that Plaintiff is a Louisiana Resident. However, Plaintiff maintains a deep consumer footprint in Texas. Texas Consumer protection Statutes were drafted to protect Texas consumers, not necessarily just Texas residents. Plaintiff represents that he banks all his money in Texas (at Vera Bank in Harrison County, Texas) and receives his monthly VA Benefits on a debit card issued by Comerica Bank of Dallas County, Texas (a U.S.

Treasury Department Contracted Partner). The Plaintiff enlisted in the U.S. Army while he resided in Van Zandt County, Texas back in 2001 after the "9/11 Terror Attacks". When he was honorably discharged (due to service-connected disabilities arising from an in-service incident) the State of Texas recognized him as a Texas Veteran. The Plaintiff also maintained, until he became too disabled to work, two Texas Professional Trade Licenses (A/C Refrigeration Technician # 3914 through the Texas Department of Licensing and Regulation & Liquid Propane Gas Appliance Technician # xxx-xx-8876 issued through the Texas Railroad Commission). The Plaintiff is also a member in good standing with the Panola-Harrison Electric Cooperative (Member # 99994580) of Marshall, Texas.

58. Plaintiff also primarily grocery shops weekly in Texas (which is about 5 ½ miles away from the Plaintiff's home) because Texas has no tax on 'unprepared food stuffs'.

59. The Texas Finance Code § 392.302 states "[i]n a debt collection, a debt collector may not oppress, harass, or abuse a person by: causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number." Tex. Fin. Code § 392.302(4).

60. Plaintiff represents that Texas law should apply to the Plaintiff's claims surrounding the documented March 26, 2020 debt collection pre-recorded voice call (from a Dallas County, Texas area code phone number) which followed a relentless volley of other unwanted calls from DRS to the Plaintiff's cellphone.

61. Defendant DRS availed itself to the laws of the forum State of Texas because it (1) called the Plaintiff from a 469 area code number;  (2) According to the Texas Comptroller of Public Accounts DRS maintains a registered agent in Austin, Texas; and (3) registered [for] an Automatic Dialing and Announcing Device (ADAD) Permit No. 160003 issued by the

Public Utility Commission of Texas and despite knowing the laws of the State of Texas they abused the privileges associated with their ADAD technology dialer permit and further abused the Plaintiff by their misconduct as alleged throughout and herein, and is liable to the Plaintiff for up to $10,000 in aggregate for all the violations that the Court deems Defendant liable to the Plaintiff for under this cause of action.

## CAUSE OF ACTION No. VI:
## THE TEXAS BUSINESS & COMMERCE CODE SECTION 350.053

62. Plaintiff incorporates all the foregoing paragraphs as though the same were set forth at length herein.

63. The Texas Business and Commerce Code § 305.053 states "[a] person who receives a communication that violates 47 U.S.C. Section 227 [the TCPA], a regulation adopted under that provision, or Subchapter A may bring an action in this state against the person who originates the communication. . . ." Tex. Bus. & Com. Code § 305.053(a).

64. Plaintiff alleges that the documented March 26, 2020 debt collection pre-recorded voice call (from a Dallas County, Texas area code phone number) constituted a violation of the statute.

65. Plaintiff seeks damages of up to $1,500 under this cause of action at the discretion of the Court.

## CAUSE OF ACTION No. VII:
## THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT
### Colo. Rev. Stat. § 5-16-106 *et seq.*

66. Plaintiff incorporates all the foregoing paragraphs as though the same were set forth at length herein.

67. According to the Colorado Division of Consumer Credit, Defendant DRS maintains an in-state location of 7200 South Alton Way, Suite B180, Denver, Colorado 80112 and held a Collection Agency License No. 994010 that was active during the time in which Defendant DRS's Colorado ATDS placed a pre-recorded voice debt collection call to Plaintiff's cellphone from the Colorado area code number on March 4, 2020.

68. Plaintiff represents that Defendants conduct violated the Colorado Fair Debt Collection Practices Act by violating the Federal FDCPA's subsection (e).

69. Plaintiff alleges that Defendant's actions were in violation of five subsections of § 1692e: 1692e, 1692e(4), 1692e(5), 1692e(7), and 1692e(10). Under Section 1692e, debt collectors "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, including using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," id. § 1692e(10).  Because Defendant DRS would not disclose their identity to the Plaintiff when he would call them back and because DRS is not a registered trade name of the Defendant that is well recognized enough to constitute disclosure of the Caller's identity the Plaintiff represents that this violated subsection e of the FDCPA together along with the fact that Defendant DRS also would hang up on the Plaintiff when he would ask "who is DRS"?

70. Colorado law and the way Courts in Colorado have interpreted the statute (CFDCPA) necessitates that Plaintiff not allege or "seek" damages for "overlapping provisions" of the FDCPA subsections and Colorado FDCPA. Plaintiff represents that the best and most well

articulated analysis of this dichotomy is explained very well by a Magistrate Judge from

Colorado in *Georgopulos v. PPM Capital, Inc.* No. 1:19-cv-00347-DDD-STV DE *44 (D.

Colo.) (Oct. 21, 2019) finding "Plaintiff alleges that Defendant's conduct violated the

CFDCPA. Like the FDCPA, the CFDCPA "shares the 'remedial purpose of protecting

consumers against debt collection practices that take advantage of . . . persons who receive

a debt collection communication.'" *Peterson-Hooks v. First Integral Recovery, LLC*, No.

12-cv01019-PAB-BNB, 2013 WL 2295449, at *5 (D. Colo. May 24, 2013) (alteration in

original) (quoting *Flood v. Mercantile Adjustment Bureau, LLC*, 176 P.3d 769, 773 (Colo.

2008)). "Because Congress did not intend for the FDCPA to preempt state regulation of

debt collection practices, states may provide greater protection to consumers than those

available under the FDCPA." Id. (citing 15 U.S.C. § 1692n). But individuals may not

recover damages under the CFDCPA if they recover for "like provision[s]" under the

FDCPA. Colo. Rev. Stat. § 5-16-113(7). This District has defined a "like provision" as "an

overlapping or equivalent provision contained in both statutes." *Peterson-Hooks*, 2013 WL

2295449, at *5 (collecting cases). Here, Plaintiff's CFDCPA claim is premised on the same

facts as those supporting Plaintiff's FDCPA § 1692d claim. Identical to § 1692d, the

CFDCPA prohibits debt collectors from "engag[ing] in any conduct the natural

consequence of which is to harass, oppress, or abuse any person in connection with the

collection of a debt." Colo. Rev. Stat. § 5-16-106(1). The CFDCPA also specifically

prohibits the "use of obscene or profane language" in connection with collecting a debt,

and "[c]ausing a telephone to ring or engaging any person in telephone conversation

repeatedly or continuously with intent to annoy, abuse, or harass any person at the called

number," id. § 5-16-106(1)(b), (e), as in § 1692d(2) and 1692d(5) of the FDCPA. Again,

Plaintiff alleges that Defendant repeatedly called and texted Plaintiff's cell phone, even after Plaintiff told Defendant to stop contacting him, and that Defendant called Plaintiff "a piece of shit" in order to belittle him, and induce him into paying the debt. [#1 at ¶¶ 20, 22, 87-88] For the same reasons discussed with respect to Plaintiff's claims under Section1692d of the FDCPA, Plaintiff has also established violations of his rights under the CFDCPA. *See Williams v. LVNV Funding, LLC*, No. 14-cv-01356-MEH, 2014 WL 4066612, at *8 (D. Colo. Aug. 14, 2014). Accordingly, the Court RECOMMENDS that Plaintiff's Motion be GRANTED to the extent it seeks default judgment on Plaintiff's CFDCPA claim, and that default judgment be entered in favor of Plaintiff and against Defendant on that claim. The Court notes that Plaintiff does not include any request for damages under the CFDCPA in the Motion. [See generally #36] Nor could Plaintiff recover damages for Defendant's violations of the CFDCPA, because Plaintiff has only asserted claims under the CFDCPA for which there are like provisions under the FDCPA. *Cf. Ramirez v. Vero Beach Fin. Grp., Inc.*, No. 15-cv-00002-WYD-KLM, 2015 WL 3799699, at *3 (D. Colo. June 17, 2015) (finding plaintiff was entitled to statutory damages under both the FDCPA and CFDCPA because plaintiff did not seek to recover under overlapping provisions of those statutes)."

71. Because Defendant DRS's conduct violated the FDCPA's subsection e the Plaintiff seeks damages under the CFDCPA of up to $1,000 at the discretion of the Court or trier of fact under this Cause of Action.

## CAUSE OF ACTION No. VIII:

## MINNESOTA PROHIBITION OF UNSOLICITED PRE-RECORDED VOICE CALLS

**2005 Minnesota Statutes - 325E.27 — Use of prerecorded or synthesized voice messages.**

### 2005 Minnesota Statutes - 325E.31 — Remedies.

72. Plaintiff incorporates all the foregoing paragraphs as though the same were set forth at length herein.

73. Defendant DRS's March 16, 2020 pre-recorded voice message call recorded in Plaintiff's Voice Mailbox and later played by the Plaintiff is alleged to have originated from Minnesota (based on the 952 Minnesota area code utilized).

74. The 2005 Minnesota Statutes 325E.27 provides for a private right of action for unsolicited pre-recorded voice calls to a cellphone by stating "A caller shall not use or connect to a telephone line an automatic dialing-announcing device unless: (1) the subscriber has knowingly or voluntarily requested, consented to, permitted, or authorized receipt of the message; or (2) the message is immediately preceded by a live operator who obtains the subscriber's consent before the message is delivered. This section and section 325E.30 do not apply to (1) messages from school districts to students, parents, or employees, (2) messages to subscribers with whom the caller has a current business or personal relationship, or (3) messages advising employees of work schedules.

75. There was no live operator that 'said' anything during the pre-recorded voice call that was recorded on Plaintiff's Verizon Wireless Voice Mailbox, because there was simply no human contact intervention involved. There was no live agent that said anything before the pre-recorded voice 'played' as captured by the voicemail recording in violation of the Minnesota Statute.

76. Minnesota's private right of action is found at 2005 Minnesota Statutes - 325E.31 and states: "A person who is found to have violated sections 325E.27 to 325E.30 is subject to

the penalties and remedies, including a private right of action to recover damages, as provided in section 8.31."

77. Plaintiff relies on the discretion of the Court or alternatively the trier of fact to determine what damages are appropriate under this Cause of Action and alleges that DRS is liable to Plaintiff for up to $1,500 in damages for what Plaintiff alleges is one violation of the [Minnesota] statute.

## PRAYER FOR RELIEF:

**~~~Plaintiff Demands Trial by Jury on all Issues so Triable under the Seventh Amendment to the U.S. Constitution~~~**

**Wherefore,** the Plaintiff seeks Judgment in Plaintiff's favor and Damages against Defendant based on the following requested Relief:

Statutory Damages;

Treble Damages;

Stacked Damages;

Enhanced Civil Penalties under Georgia Law;

Pre and or Post Judgment Interest on Judgment;

Injunctive Relief enjoining Defendant from future violations;

&

Such other and further Relief the Court deems necessary, just and proper.

Respectfully Submitted,

X _____        1-3-2021 @ 6:34pm CST
Clinton Strange                              Dated
Pro Se
7021 Winburn Drive
Greenwood, LA 71033
(318) 780-8890
StrangeC982@gmail.com